In the Matter of the Claim of JOSEPHINE KONIECZNY, Respondent, against J. KRESSE CO., INC., and Another, Appellants.

STATE INDUSTRIAL BOARD; Respondent.

Third Department, March 10, 1932.

*John P. Smith* [*Thomas D. Scoble, Jr.,* of counsel], for the appellants.

*Sidney B. Heller,* for the claimant, respondent.

*John J. Bennett, Jr., Attorney-General* [*John R. O'Hanlon* and *James A. McLaughlin, Assistant Attorney-General,* of counsel], for the respondent State Industrial Board.

RHODES, J. The Industrial Board has found, upon competent supporting evdence, that the deceased employee, as the result of accidental injuries sustained in his employment, became insane, due to which insanity he committed suicide as the result of an uncontrollable impulse and without conscious volition, and that said death unavoidably resulted from the said accidental injuries. There is, therefore, nothing to sustain the appellants' contention of lack of causal relation between the injuries and death. (*Delinousha* v. *National Biscuit Co.,* 248 N. Y. 93.)

A more difficult question is raised by the objection of the appellants that the claimant is not the widow of the deceased.

The Board has found that claimant's first husband abandoned her in September, 1914; that thereafter although claimant made diligent and persistent inquiries as to his existence and whereabouts over a period from September, 1914, to January, 1922, she had no knowledge and has no knowledge that he is living, and from the information she did receive she believed him at that time to be dead; that on January 3, 1922, she and the deceased contracted a valid common-law marriage and on that date began living together as husband and wife, and continued so to do and were introduced and recognized as husband and wife and have been so recognized by friends and relatives from January 3, 1922, to the time of the death of the decedent.

The appellants challenge the validity of the said second marriage on the ground that having previously entered into a valid marriage with her former husband, her alleged second marriage was void *ab initio*, citing in support of this contention *Van Wyk* v. *Realty Traders, Inc.* (215 App. Div. 254). That case states that at common law the remarriage of one having a husband or wife actually living, although unheard of for years and believed to be dead, was void *ab initio*. But in that case and in the authorities cited therein in support of said proposition, it appeared that the absent party to the first marriage was actually living at the date when the other party to the original marriage contracted a second marriage. The

facts here presented do not come within the rule. We are confronted here with two opposing presumptions: one is that the status of the former marriage continued; the other is the rule that the death of either husband or wife will be presumed after an absence of seven years without being heard from. (*O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *King* v. *Paddock*, 18 Johns. 140; *Jackson* v. *Claw*, Id. 346.) In addition we have the further presumption in favor of the validity of the second marriage. (*O'Gara* v. *Eisenlohr*, *supra; Hynes* v. *McDermott*, 91 N. Y. 451; *Price* v. *Tompkins*, 108 Misc. 263; 190 App. Div. 967; *Betsinger* v. *Chapman*, 88 N. Y. 487; *Matter of Matthews*, 153 id. 443; *Gall* v. *Gall*, 114 id. 109.)

The burden of overcoming the presumption in favor of the validity of a marriage rests upon the person asserting such invalidity. (*Price* v. *Tompkins, supra*.)

While seven years' unexplained absence raises a presumption of death, in order to make the presumption available more is required than the mere fact of absence during the period. Evidence must be produced to justify the inference that the death of the absentee is the probable reason why nothing is known about him. Before a court is justified in presuming the death of a person, at a designated time, because of his absence, the proof should remove the reasonable probability of his being alive at the time. (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197; *Matter of Wagener*, 143 App. Div. 286; *Fuller* v. *New York Life Ins. Co.*, 199 Fed. 897; *Davie* v. *Briggs*, 97 U. S. 628; *Matter of Board of Education of New York*, 173 N. Y. 321; *McCartee* v. *Camel*, 1 Barb. Ch. 455.) The burden of proving facts sufficient to raise the presumption of death from seven years' absence rests upon the party asserting such death. (*Butler* v. *Mutual Life Ins. Co., supra*.) Whether or not the presumption of death arises from the evidence is almost always of necessity a question for the jury, but when " the evidence is without contradiction and incapable, whether without or with contradiction, of creating, in reasonable minds, conflicting inferences, the question is one of law for the trial justice to decide." (*Butler* v. *Mutual Life Ins. Co., supra*.) " ' This is incorrectly spoken of in some books as a presumption of law, but it is in truth a mixed presumption, * * *.' " (*Matter of Board of Education of New York, supra*.) " Even if the facts are undisputed, it is the jury that must draw the inferences, save perhaps in exceptional cases." (*Fuller* v. *New York Life Ins. Co., supra*.)

Guided by the rules thus established, the evidence is to be examined to determine whether or not facts were produced sufficient, with the inferences legitimately to be drawn therefrom, to support the presumption of death because of absence. In other words, is

such absence unexplained and from the facts is it a reasonable inference that the first husband was dead when she remarried? It may be conceded that conflicting inferences might be drawn from the established facts. The claimant testified concerning her first husband, " We had always arguments. He was fifteen times arrested. The last time he stole money and ran away. And the judge says, ' He isn't the man for you. You can't live with that man.' Twenty-four hours he has to go out, twenty-four hours. He left a woman one day and the officer came and took him out. Since that time I never seen him again. He would not work." The age of the first husband does not appear. He and claimant were married by a Catholic priest in January, 1907. She testified that she lived with him from 1910 to 1914. Her testimony establishes that he was dissolute, would not work, and that he was abusive to her. Nevertheless, after his disappearance, she testifies: " I asked and I was going around '14, '15, '16, '17, every year, all over, in the restaurant and places where he went before. Everybody tell me they have never seen him, he must be in Europe or must be dead, because haven't seen him since." She employed a lawyer to assist her " because I have to know where he is living or why he left me. When the child was small he left, so why he left me? Wasn't I good enough? He left me; that is why I did." She made inquiries of his people and was told they had never seen him; that he must be in Europe or dead. She further testified: " I think he is dead. He never called on the child. He never called on me. I was looking for him eight months. A letter came to Europe he is dead, from his whole family."

While the facts may indicate that the claimant would not be likely to hear from her husband under the circumstances surrounding their separation, there are no facts suggesting any reason why, if living, he would not have communicated with members of his own family. His failure so to do and his dissolute habits are plausible facts supporting an inference that he was dead when she remarried. The State Industrial Board has drawn the inference in its finding to the effect that claimant contracted a valid common-law marriage with the deceased employee, such finding necessarily being predicated upon the fact that her previous husband was then dead, and that there was no impediment to such second marriage. The conclusion of the Board has support in the evidence and is, therefore, conclusive on us.

This discussion has proceeded upon the theory that the facts are to be governed by the law of the State of New York. It is not recited in the findings, but the proof is that claimant and the decedent met in Philadelphia two weeks before the end of Decem-

ber, 1921, and first lived together as man and wife in January, 1922; that later, in May, 1922, they went to Europe together, but that the marriage did not take place in Europe. A proper inference, therefore, is that the marriage occurred in Pennsylvania on January 3, 1922, as found by the Industrial Board; if not then, it took place, if at all, in Europe or in New York because during the greater part of the time after said alleged marriage, claimant and decedent lived in New York city where his death occurred. There is no proof as to the law of any place in Europe where the parties lived together; nor is there any proof as to the law of Pennsylvania. Where the record is silent as to the law of a foreign country, the *lex fori*, the law of the State of New York, will be applied. (*Monroe* v. *Douglass*, 5 N. Y. 447; *Brown* v. *Knapp*, 79 id. 136; *Savage* v. *O'Neil*, 44 id. 298; *Matter of Masocco* v. *Schaaf*, 234 App. Div. 181.) We may take judicial notice of the historical fact that Pennsylvania is a common-law State (*Matter of Roberts*, 8 Paige, 446); therefore, its common law will be presumed to be the same as the State of New York. (*Vanderpoel* v. *Gorman*, 140 N. Y. 563; *First National Bank* v. *National Broadway Bank*, 156 id. 459; *Van Wyk* v. *Realty Traders, Inc.*, *supra*.)

Upon the record here presented, therefore, we are constrained to hold that claimant entered into a valid common-law marriage with the decedent, for it was entirely competent to prove the marriage by cohabitation, acknowledgment of the marriage by the parties themselves, reception of them as man and wife by their friends and relatives, and common reputation. (*O'Gara* v. *Eisenlohr*, *supra*.)

The award should be affirmed, with costs to the Industrial Board.

All concur; HILL, J., in the result.

Award affirmed, with costs to the State Industrial Board.