In the Matter of the Claim of AUDREY MYERS, on Behalf of Herself and a Minor Child, Respondent, against SAM TUTTLE, Doing Business as LIBERTY MACHINE Co., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, September 19, 1951.

*Louis L. O'Brien* for appellants.

*Deckelman* and *Schadt* for claimant-respondent.

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

BERGAN, J. In the course of his employment Robert D. Myers was killed in 1948 while operating a crane. The question presented by the appeal is whether there is substantial evidence

upon which the Workmen's Compensation Board could find, as it has, that the claimant is his widow.

Claimant testified that on November 17, 1947, she and the decedent, both then residents of New York, joined in a ceremonial marriage at Elkton, Maryland. The arrangements for the marriage were made by the decedent out of claimant's presence. She did not know the name of the person who solemnized the marriage nor the nature of his office. He had a book in his hand. The husband signed some papers; a fee was paid; there were other people in the room. Outside the building there was a sign " Justice of the Peace ".

The parties later went to Florida where they resided for some months, and the proof is clear and wholly uncontradicted they lived publicly as husband and wife; treated each other as such; were treated by their families and acquaintances as married. Proof of this was offered independently of claimant's testimony.

There is proof of the mailing out of formal announcement of the marriage of November 17, 1947. A child was conceived from the relationship and born after the husband's death. Documentary proof sustains the fact the parties treated each other as being married. There is, however, no record evidence of the ceremonial marriage itself.

The marriage law of Maryland creates the problem. The statute there enumerates the officers who may solemnize marriage. (Maryland Code of Public General Laws, art. 62, §§ 4, 5 et seq.) They must be religious officers of some kind. Nothing in the statute requires the ceremony itself be religious; nor, indeed, is it necessary that the officer be a minister of the gospel. He may also be an " official " of a religious " order " or " body " authorized by its customs or by its rules to "join persons in marriage ". (§ 4.) To be a valid marriage in Maryland, solemnization must be by the kind of officer enumerated in the statute. (Denison v. Denison, 35 Md. 361, 379; Knapp v. Knapp, 149 Md. 263.)

From a publicly maintained relationship of husband and wife, such as this record discloses, there springs a powerful presumption of the pre-existence of a valid marriage. The presumption must necessarily take within its sweep the authority of the officer to solemnize it under municipal law of the place of performance, as well as the fact of solemnization itself.

We accept, therefore, under the law of New York a presumption that the officer who married claimant in Maryland was authorized to do so. What the record discloses about him is not inconsistent, in the sense of being destructive to that presump-

tion, with his being an official of a religious body or order by custom authorized to do what this record shows he did openly and at the request of the decedent.

In judicial language of considerable warmth and force, Judge ANDREWS in *Hynes* v. *McDermott* (91 N. Y. 451, 459) dealt with the New York presumption of a valid marriage arising from a publicly maintained relationship of husband and wife. He felt the presumption to be "one of the strongest" which our law knows. A justice of the peace sign outside the door does not sweep all of this aside.

There is, of course, the additional presumption that the officer would not by an unauthorized solemnization of marriage commit an act offensive to the laws of Maryland. A case of counterbalanced presumptions as to marriage and the noncriminal nature of acts in relation to marriage is *Palmer* v. *Palmer* (162 N. Y. 130). But here, the two presumptions implement and re-enforce each other. The presumption thus attaching to the validity of the solemnization of marriage reaches equally the authority of the officer, even though the entire proof addressed to the marriage be entirely circumstantial.

In *Betsinger* v. *Chapman* (88 N. Y. 487 [1882]) the parties concededly were married on January 20, 1864; the question that became important in the case was whether they had previously been married, as the complaint alleged, on May 24, 1863. The evidence of the first marriage was entirely "circumstantial" and there was no proof of "the actual solemnization". (PP. 497–498.)

Still the proof showed the parties after May 24, 1863, treated each other in marital relationship; and while proof of this was somewhat general in nature it was regarded by the court as sufficient, when aided by the presumption, in support of a definite, dated, ceremonial marriage to survive the motion for nonsuit. In *Chamberlain* v. *Chamberlain* (71 N. Y. 423) somewhat similar proof was held to make out a case of formal marriage prima facie, although it was there held rebutted on the whole case.

All of this, surely, would seem to us to cover in the authority of the officer in Maryland to solemnize the marriage and to answer what need be answered in support of the finding of the board that there was a valid Maryland marriage. (Cf. *Matter of Konieczny* v. *Kresse Co.*, 234 App. Div. 517.)

In a precautionary spirit the board has found, additionally, that there was a presumption of common-law marriage arising from the parties' residence in Florida consistent with the law

of that State and their consummation of their marriage there. There is some force to this additional ground for validity, although the view has been strongly expressed in New York that where parties believe they have had a ceremonial marriage, the intent and mutual consent necessary to " adopt " the " relationship " of a common-law marriage are wanting. (See the exhaustive study of the subject by MERRELL, J., in *Smith* v. *Smith,* 194 App. Div. 543.)

Still the weight of New York authority perhaps is the other way as to a foreign common-law marriage. There is no doubt that the parties in *Hynes* v. *McDermott* (91 N. Y. 451, *supra*) regarded themselves married by a specific contractual arrangement made in England, the equivalent in point of specific time and place, at least, of a ceremonial marriage. While this marriage was held invalid, a subsequent common-law relationship evoking the presumption of marriage in France was recognized by the New York court as having arisen from the cohabitation of the parties in France (p. 462), even though they themselves seem to have relied on their English marriage which the New York court held invalid under English law. It is unnecessary in our view of the case, however, to go further than to decide that the Maryland marriage is valid.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., HEFFERNAN, BREWSTER and COON, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board. [See 279 App. Div. 695.]