■ In the Matter of the Claim of JOAN L. RAHILL, Appellant, v 645

RESTAURANT CORP. et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workmen's Compensation Board, filed July 22, 1976, which found that claimant was not the legal widow of the decedent. Decedent was killed as the result of an industrial accident on October 27, 1972 and claimant filed an application for benefits which, among other things, alleged her marriage to decedent on September 22, 1961 in Elkton, Maryland, before a Justice of the Peace. The board has found she is not decedent's legal widow and claimant's appeal is limited to an attack on its finding that she had not entered into a valid ceremonial marriage in Maryland. We reject her arguments because substantial evidence supports that finding. During the course of hearings claimant did not produce documentation of the alleged marriage and was unable to recall the name of the Justice of the Peace or the location in Elkton where the ceremony supposedly took place. She claimed to have lost her copy of the marriage certificate and to have been advised, upon inquiry to the appropriate clerk's office for Elkton, that marriage records had been destroyed by fire. Claimant's sister testified that she witnessed this ceremony, but her evidence added no further details concerning these events. Representatives of the employer secured the appearance of the clerk of the Circuit Court for Cecil County wherein Elkton is located. He testified that he had been clerk for some 22 years and that the recordation of all marriages in Cecil County was under his general supervision. Relating his account to the period in question, he specified that Justices of the Peace were not authorized to perform marriages in Maryland; that he personally knew all of the Justices within Cecil County; and that, to his knowledge, none were otherwise qualified as members of a religious group authorized to undertake such ceremonies, or had they ever performed a marriage. Moreover, Cecil County had never sustained a fire destroying its records and, again to his knowledge, neither had concerned State offices in Baltimore, Maryland. These latter points were significant as they pertained to the recordation of marriages for, while not essential to the validity thereof, the triplicate license form memorialized the marriage and was required to be distributed. One copy would be given to the parties after the ceremony and the person officiating would then forward the remaining papers to this witness. He would then retain and record one and transmit the last copy to State authorities in Baltimore for filing. Lastly, he related that a search of Cecil County records had failed to disclose any marriage license issued to claimant's decedent from June of 1959 to 1964. In asserting that the presumption of a valid marriage was not overcome, claimant mistakes the degree of strength such a presumption has under the circumstances herein presented. It is undisputed that claimant and decedent lived openly and decently as husband and wife until the time of his death and had children, yet the fact of cohabitation in that fashion "cannot and does not *create* a marriage"; it merely raises a presumption that such a marriage exists *(Matter of Fischer v Endres Delivery Co.,* 45 AD2d 892). Once a ceremonial marriage is established, by resort to this presumption if necessary, then the presumption of the *validity* of that marriage becomes strong indeed and includes the authority of the officer to solemnize it *(Matter of Myers v Tuttle,* 278 App Div 543, mot for lv to app den 303 NY 1014). In this case, however, it is plain that the technical validity of claimant's supposed marriage was not reached as the board obviously disbelieved claimant and concluded that no marriage ceremony had ever taken place. That a ceremony occurred as claimant and her sister said it did was plainly incredible. A marriage license might be lost; copies thereof regularly filed in two separate locations

might be destroyed or overlooked; and a Justice of the Peace might be qualified to perform marriages without a clerk being aware of this dual authority and its exercise, but the chances of all these happenstances arising simultaneously is infinitesimal. Even if claimant called the wrong official in search of some record of her marriage, it is highly unlikely that she would be fobbed off by a lie, or that a clerk involved with marriage records would not know of their destruction by fire anywhere in his State. It is within the province of the board to resolve the credibility of the various witnesses and we discern no reason to quibble with its manifest choice since proof both substantial and compelling supports that determination. Had the board accepted claimant's evidence based on the presumption of a ceremony and proceeded to conclude that the marriage entered into by the parties was invalid owing to a lack of authority by a Justice of the Peace to perform it, a different and far narrower issue would have arisen. Only then would we have to consider whether the more forceful presumption of validity had been overwhelmingly rebutted (see *Matter of Esmond v Lyons Bar & Grill,* 26 AD2d 884). Since a foundation for the weaker presumption favoring a ceremony was convincingly removed from this case, we have no hesitancy in affirming the board's decision. Decision affirmed, without costs. Sweeney, J. P., Kane, Mahoney and Main, JJ., concur; Mikoll, J., dissents and votes to reverse in the following memorandum. Mikoll, J. (dissenting). James Rahill, the decedent, was shot to death at his place of business on October 27, 1972. A claim for death benefits was filed by Joan Lee Rahill, as his widow. She testified that she and the deceased were married September 22, 1961, in Elkton, Maryland, by a person she believed to be a Justice of the Peace, in his home. She said that they obtained a marriage license two days earlier in a municipal building in another county in Maryland and were directed to an address in Elkton where they could get married. They visited a sister of the deceased who lived in Norfolk, Virginia, and then drove with her to Elkton where the sister was a witness to the marriage ceremony. The sister testified that she was present at the ceremony and did, in fact, sign a marriage form as a witness. Claimant also testified that upon their return to New York she advised her parents and others of her marriage, including her best fried, Hermina Birnbaum, to whom she showed her wedding ring. About five weeks later, claimant had a party at her home for her friends at which she received wedding presents. She and decedent also visited Hermina Birnbaum in Florida for four days at which time they were introduced to friends as husband and wife. The couple lived together as man and wife continuously from September 22, 1961 to the date of his death. They had two children: a son, James Glenn Rahill, born April 21, 1962, and a daughter, Kim, born December 2, 1965. The birth certificates indicated decedent as the father and claimant as the mother. Claimant applied for and received Social Security benefits as the widow of the decedent. Hermina Birnbaum testified that claimant told her of her wedding to the deceased a day or two after the wedding and that she attended a party at claimant's home where wedding gifts were presented. Mrs. Birnbaum also told of the Rahill's stay at her residence in Florida, as husband and wife, for four days in 1969. Decedent was well known in the community and had been the captain of the George Washington High School basketball team where both had attended high school. Claimant first discovered she could not locate her marriage certificate when she attempted to register her son at a Catholic school. The school accepted a baptismal certificate in its place. On contacting a person in the county clerk's office in Elkton she was advised that she could not get one because of a fire. The clerk of the Circuit Court, Cecil

County, testified that Elkton was the first county people from the northeast States reached coming into Maryland and that it was a popular place for people to be married. Thirteen thousand marriages a year were performed in Elkton at that time. He said a Justice of the Peace could not perform a marriage unless he was otherwise qualified by law as a member of a religious body or authorized by the rules or custom of a religious group or body to perform marriages. The clerk stated that many ministers around Elkton in those years, who performed marriages, did not have a church. He said it was the duty of the person performing the ceremony to forward the marriage license form to the proper county clerk, after the ceremony. The county clerk was then to have forwarded a copy of the marriage license to the board of health office in Baltimore. However, he did not make a check with the health office to discover if a copy of the Rahill license had been filed there. He stated that an unrecorded marriage is a valid marriage in Maryland and that if a couple was married by a person who held himself out to be able to perform a marriage ceremony, that marriage would be valid, even if not recorded. The referee in a decision dated November 26, 1973, reaffirmed November 13, 1975, found that claimant was the legal widow of decedent, James Rahill. The carrier appealed. The board rescinded the referee's finding and reopened the case to take the testimony of the clerk of the Circuit Court in Elkton, Maryland. The board reversed the referee's decision and made a finding of no legal or common-law marriage. The board found that "the claimant herein did not enter into a valid ceremonial marriage in Maryland". The board erred. The board's decision is not supported by substantial evidence. Here, there was uncontradicted evidence that decedent and claimant lived together, openly and notoriously, as husband and wife. They had two children born of their union. This gives rise to a powerful presumption of legitimacy indicative of a valid marriage *(Matter of Fischer v Endres Delivery Co.,* 45 AD2d 892; *Matter of Myers v Tuttle,* 278 App Div 543). The evidence before the board was insufficient to rebut this strong presumption of a valid marriage. This is not a case where others challenge the widow's representations claiming to be the decedent's rightful beneficiaries. This court has often made the statement that, " 'The law presumes morality and not immorality; marriage and not concubinage; legitimacy and not bastardy.' " *(Matter of Fischer v Endres Delivery Co., supra,* p 892). In the *Fischer* case *(supra),* we stated further that: "More significantly, 'the cohabitation, apparently decent and orderly, of two persons opposite in sex, *raises a presumption of more or less strength that they have been duly married' ".* Similarly, in *Matter of Myers v Tuttle (supra,* p 544), we stated: "From a publicly maintained relationship of husband and wife, such as this record discloses, there springs a powerful presumption of the pre-existence of a valid marriage. The presumption must necessarily take within its sweep * * * the fact of solemnization itself". The fact that it is difficult to prove the negative is not necessarily controlling. The burden of overcoming the presumption of a valid marriage in a case such as this is on those seeking to invalidate the marriage. Here, the challengers must, "disprov[e] every reasonable possibility which would vitiate the marriage relationship" *(Matter of Esmond v Lyons Bar & Grill,* 26 AD2d 884). That burden has not been sustained on the proof submitted to the board. The decision of the board should be reversed.