JOHN HART, as Administrator, etc., Appellant, *v.* THE HUDSON RIVER BRIDGE COMPANY at Albany, Respondent.

In an action to recover damages for alleged negligence causing the death of plaintiff's intestate, plaintiff claimed that the deceased fell from the footway through the open draw on defendant's bridge when crossing it in the night. Defendant had placed gates over the footway on each end of the draw which were designed to be lowered when the draw was opened. Plaintiff claimed that the gate was not lowered at the time of the accident. M., a boy in defendant's employ, was called as a witness for it, and after testifying on cross-examination that he had been sent at times to pull down the gate, was asked if he told one B. on one occasion to pull it down. This was objected to and excluded. *Held*, no error.

M. testified that he did not see a woman fall from the bridge. On cross-examination he testified that he did not say in the presence of people at the draw, when the subject was discussed just after the splash in the water which he heard, that he saw the woman fall from the end of the bridge. One N. was called as a witness for plaintiff, who testified that he saw a boy among those gathered on the bridge after the draw was closed, but could not identify M. as the one. Plaintiff's counsel then offered to prove that the boy said he saw a woman fall off the bridge; this was excluded; *held*, no error; that the question as to the identity of M. with the boy whom N. saw was for the court to determine; also that

the attention of M. was not called with sufficient particularity to the time, place, persons, etc., to lay a foundation for the impeaching evidence.

A civil engineer having experience in the erection of bridges, as a witness for defendant, was allowed to testify, under objection and exception, that it was not customary to have gates of any kind on draw-bridges. *Held,* no error; that it was competent for the defense to show that the bridge was constructed with extraordinary care.

The same witness was asked, on cross-examination, whether it was safe and proper to have draws with drop-gates across the footpath of a bridge when the draw was open; this was objected to and excluded. *Held,* no error; that it was a matter of opinion and not within the range of expert evidence.

The court charged that if the jury believed that the gate was not entirely closed, but the bottom of it was two and a half feet from the bridge floor, the plaintiff could not recover. *Held,* no error.

Upon the question of contributory negligence the court charged: "It is not enough to prove facts from which either the conclusion of negligence or the absence of negligence may be with equal fairness drawn, but the burden is upon plaintiff to satisfy you that there was no contributory negligence on the part of the deceased." *Held,* no error.

(Argued January 20, 1881; decided February 8, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of defendant, entered upon an order made December 4, 1880, overruling plaintiff's exceptions and directing judgment upon a verdict.

This action was brought to recover damages for the death of Jane Hart, plaintiff's intestate, alleged to have been caused by the defendant's negligence.

The claim of the plaintiff was that the deceased, in crossing upon the defendant's bridge over the Hudson river at Albany, fell from the footway through the open draw and was drowned. When last seen alive she was crossing a street bridge on her way to the river bridge, about 7 P. M.; about that time the draw was opened, when part way opened a splash was heard by the employees upon the draw "like something falling in the water." The body of the deceased was found in the river the next day. The bridge had a way for foot passengers on its south side with railings on each side. There were stop-gates across this footway at each end of the draw which were designed

to be let down when the draw was opened and raised when it was closed. These gates were raised and lowered by windlasses. There was an established signal by whistles from the engine on the draw to indicate to those operating the gates when to close them.

The further facts pertinent to the questions discussed appear in the opinion.

*Amasa J. Parker* for appellant. The court improperly permitted Hilton to testify that it was not customary to have gates of any kind on draw bridges. (*Ernst* v. *Hud. R. Co.*, 39 N. Y. 61; *Kissenger* v. *N. Y. & Harlem Co.*, 56 id. 538.) The court erred in charging that if the jury believed that the gate was not entirely closed, but the bottom was two and a half feet from the bridge floor, the plaintiff could not recover. (*Dyer* v. *Erie R. R. Co.*, 71 N. Y. 228; *Twomley* v. *N. Y. Cent. Co.*, 69 id. 158; *Coulter* v. *Am. Mer. Co.*, 56 id. 585; *Buel* v. *N. Y. Cent. Co.*, 31 id. 314; *Eckert* v. *Long Island Co.*, 57 Barb. 560.)

*Samuel Hand* for respondent. The burden of proof was upon plaintiff and he was bound to show that the injury was occasioned by defendant's negligence. (*Hale* v. *Smith*, 78 N. Y. 480, 483; *Cordell* v. *N. Y. C. R. R Co.*, 75 id. 330, 332; *Reynolds* v. *N. Y. C. R. R. Co.*, 58 id. 248; *Warner* v. *N. Y. C., etc., Co.*, 44 id. 465, 471; *Gaynor* v. *Old Col. R. R.*, 100 Mass. 208; *Murphy* v. *Doane*, 101 id. 466.) A gate, whose bottom was two and a half feet from the floor, was a sufficient guard. (*Cleveland* v. *N. J. Steamboat Co.*, 68 N. Y. 312; *Dongan* v. *Transp. Co.*, 56 id. 7; *Gavin* v. *City of Chicago*, Alb. L. J., Jan. 8, 1881, p. 37; *Dows* v. *Rush*, 28 Barb. 157; *Grazer* v. *Steilwagen*, 25 N Y. 315.) The exclusion of the hearsay evidence of what a boy said about seeing a woman falling off the bridge was proper. (*King* v. *N. Y. C. & H. R. R. R. Co.*, 72 N. Y. 609; *Loomis* v. *Western Turnpike Co.*, 32 id. 127; *Palmer* v. *Haight*, 2 Barb. 210; *Kimball* v. *Davis*, 19 Wend. 437; *Sprague* v. *Caldwell*, 12 Barb. 516; *Crounse* v. *Fitch*, 1 Abb. Ct, App. Dec. 475.)

MILLER, J.  Several errors are alleged to have been committed upon the trial of this action, in the rulings of the judge in regard to the admission and exclusion of evidence, which demand consideration.  Miller, a boy in defendant's employ, as a witness for it, testified in reference to the fact, that whistles were blown on the night of the accident for the gates and to turn the signals. Upon his cross-examination the question was put: " You have been sent out to tell Borst to put it (the gate) down ; " and he answered: " I have been sent to pull it down."  He was then asked : " Did you tell Borst, on one occasion, to put it down ? " The defendant's counsel objected to the testimony, and it was excluded and an exception taken.

We think there was no error in the ruling of the judge. What the witness told Borst was not material, and could have no direct bearing upon the case.  That he told Borst to pull it down would not add to the strength of any testimony given to prove that he had pulled it down himself.  While it might be competent to show that it was up at any particular time, or times, and was pulled down, the declarations of the witness were not admissible for that purpose, as this fact could be proved quite readily, if true, without such declarations, and by higher and better evidence.  It is not claimed that the declarations of the witness were admissible upon any other ground than that stated, and the evidence was properly excluded.

The offer to show by the witness, Neville, that the boy Miller said that he saw a woman fall off the bridge, was also incompetent.  Miller had testified that he did not see a woman fall from the bridge and that he did not say, in the presence of people, at the draw, when the subject was discussed just after the splash in the water, which he heard, that he saw the woman fall from the end of the bridge ; and the object of the evidence was to impeach his testimony.  It was questionable from the testimony, whether the boy whose declaration it was proposed to prove was Miller.  Neville could not identify him.  The question, as to the identity of Miller with the boy whom Neville heard speak, was addressed to the judge ; and that fact, as the case stood, rested with him to determine, before deciding as to

the admissibility of the testimony. As this was not clearly established, and could not properly be submitted to the consideration of the jury, it is manifest that the evidence was incompetent. Aside, however, from this view, we think that a sufficient foundation was not laid to authorize the question to be put. The evidence of Miller, denying that he had said so, was not enough to allow proof that it was said in the presence of Neville. The time and place, and the persons to whom, or in whose presence, the alleged statement was made, should have been brought to the attention of the witness who it was intended to impeach, before he can be contradicted. (*Kimball* v. *Davis*, 19 Wend. 437; *Palmer* v. *Haight*, 2 Barb. 210; *Sprague* v. *Cadwell*, 12 id. 516.) The offer made was very general, without any specification as to time or place, and we agree with the trial judge, that there was no sufficient foundation laid, upon which to predicate an impeachment. It should also be noticed that the final offer, before any exception was taken, was to show that the boy said he was on the draw at the time Miller swore he was on the draw, and hence the testimony offered might not tend to contradict him.

There was no valid objection to the question put to the witness, Hilton, whether it was customary to have gates of any kind on draw bridges, so far as he knew. The witness was a civil engineer, had experience in the construction of bridges, and superintended the building of defendant's bridge. It was therefore competent to show that the bridge was constructed with extraordinary care and circumspection, and with a view to the safety and security of those passing over it, even beyond what was customary in such cases. The evidence given could not affect the question, as to the right of foot passengers to rely upon the gates after they had been placed there, while passing across the bridge. Nor was there any error in refusing to allow Hilton to answer the question put to him, as to whether it was safe and proper to have draws with drop gates across the foot path of the bridge, when the draw was open. It was entirely a matter of opinion, not properly within the rule which allows the testimony of experts, and in regard to

which one individual could form a judgment as well as another, both having equal knowledge of the circumstances. It did not relate to any thing connected with the safety or the strength of the construction, but to a question of fact, which properly belonged to the jury to pass upon, and which could not be disposed of upon the opinions of witnesses.

Exceptions were also taken to the charge of the judge upon the trial, and it is claimed there was error in charging as requested by the defendant's counsel. Defendant's counsel requested the court to charge, that if the jury believed the gate was not entirely closed, but the bottom of it was two and a half feet from the bridge floor, the plaintiff cannot recover, and the judge so charged.

We discover no objection to this portion of the charge. It is difficult to see how a person, in the exercise of ordinary care, could be injured, when the gate was sufficiently lowered to prevent such person from passing along beyond such gate; and, under ordinary circumstances, the distance named would be quite as effectual as if it was much lower. It would require some effort to get under the gate, and, if it was done, would tend to establish contributory negligence on the part of the person so doing. If it was situated as stated, it was an effectual and a sufficient obstacle to prevent foot-passengers from walking off the bridge, and to guard against carelessness or mistake, and all that could have been required in the exercise of a proper degree of care and vigilance.

There is, we think, no ground for claiming that, with such a barrier in the way, the deceased could have been injured by striking her head against it, and being momentarily blinded by the collision, became confused, and, in her struggles, passed through the opening under the gate and into the water. The very fact of such a collision taking place, in the absence of any evidence, furnishes strong proof that a proper degree of care was not exercised on the part of the deceased. Unreasonable inferences are not to be assumed, to relieve a party, under such circumstances, from the charge of negligence, and the presumption of law is in a contrary direction.

The defendant was not bound, we think, to place an obstruction, or a warning in the way which rendered it absolutely impossible to pass; and it was sufficient to guard against danger, or accident, when a proper degree of vigilance was exercised. In regard to steamboats, where there is quite as much danger from accident, it has been held that a space of three feet between the railing and the deck does not constitute negligence. (*Dougan* v. *Champlain Trans. Co.*, 56 N. Y. 7; see, also, *Cleveland* v. *N. J. S. B. Co.*, 68 id. 312.)

Nor was there any error in that portion of the charge relating to contributory negligence, to which an exception was taken, which was as follows: "It is not enough to prove facts from which either the conclusion of negligence, or the absence of negligence, may be with equal fairness drawn, but the burden is upon the plaintiff, to satisfy you that there was no contributory negligence on the part of the deceased."

The question presented by the charge is, whether the burden was upon the plaintiff to establish that there was no contributory negligence. In *Hale* v. *Smith* (78 N. Y. 483), it is held, that in cases where contributory negligence may be claimed, it is incumbent upon the plaintiff to satisfy the jury by a preponderance of proof; and it is said by RAPALLO, J., "that the absence of contributory negligence is part of the plaintiff's case, and the burden of satisfying the jury upon that point rests upon him." This doctrine is also upheld in other cases. (See *Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 471; *Reynolds* v. *N. Y. C. & H. River R. R. Co.*, 58 id. 248; *Cordell* v. *N. Y. C. & H. River R. R. Co.*, 75 id. 330.) Within this rule, we do not discover any valid ground of exception to the charge of the judge. As the evidence stood, there was no proof either way, and it was by no means clear, in the absence of evidence, that the deceased was not chargeable with contributory negligence. It was not sufficient that the evidence, in this respect, was equally balanced, and it was essential, that at least a *prima facie* case should be established.

Cases may arise where proof of the facts, of itself, shows that there was no contributory negligence; but where there is

no evidence as to what actually did take place at the time and the proof is such as to render it uncertain in regard to that subject, it cannot be said that an absence of negligence is established, within the rule referred to. In such a case, no inference can legitimately be drawn in favor of the plaintiff, within the rule stated in *Powell* v. *Powell* (71 N. Y. 73).

Under the peculiar circumstances of this case, and without intending to lay down any general rule different from that which is already established by the authorities cited, or to apply such rule to other cases, we think the charge was not erroneous, and as no error appears, a new trial should be denied and the judgment affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.