JOHN FINN, Respondent, *v.* PETER A. CASSIDY et al., Appellants.

1. NEGLIGENCE — MASTER AND SERVANT — SAFETY OF WORKING PLACE, CONTRIBUTORY NEGLIGENCE, AND ASSUMPTION OF RISK, WHEN QUESTIONS FOR JURY. Where in an action for negligence it appears that a wide trench, thirty-one feet deep, had been excavated and thoroughly supported by timbers, one side of which for a distance of some twenty feet ran along a chimney stack foundation which was twenty feet deep — that the trench had been carried down at an angle, leaving a "batter wall" to support the stack, and, in order to support it more thoroughly, narrow cuts three or four feet wide were made, starting from the bottom of the trench, running at right angles through the wall and extending upwards to within about a foot of the foundation and three feet under it, which cuts were filled in with piers of masonry as soon as made — that the earth between the tops of the cuts and the bottom of the foundation was hardpan and had become insecure from the action of water — that neither the sides nor top of the cuts were shored up or supported in any way — that the plaintiff, an employee of defendants, was ordered by them to go down into a cut made the night before in which to place one of the masonry piers under the foundation, and level off the bottom, and while so doing the earth fell from the top and one side of the cut near the top and injured him — that he had never been in this particular place before and knew nothing about it — that the defendants were aware of the actual situation and all of the danger that attended the performance of work in the cuts after the earth above and upon the sides had been saturated with percolating water — the questions whether the defendants had provided the plaintiff with a reasonably safe place in which to perform his work, whether the plaintiff was guilty of contributory negligence, and whether he assumed whatever danger there was in doing the work, are properly submitted to the jury.

2. EVIDENCE — ADMISSIBILITY OF EXPERT OPINION AS TO SAFETY OF WORKING PLACE AND METHODS OF INSURING ITS SAFETY. In such an action the opinion of a competent expert, based upon the facts and the disclosure of the whole situation, that the method of constructing the cut for the purpose of underpinning or supporting the foundation of the stack was improper, and his opinion as to the proper method which should have been adopted so as to render it safe for persons working therein, are admissible in evidence upon the issue as to whether the defendants had met the situation with reasonable prudence and care.

*Finn* v. *Cassidy*, 39 App. Div. 640, affirmed.

(Argued December 12, 1900; decided February 5, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 8, 1899, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr* and *E. W. Douglas* for appellants. It was error to admit the expert evidence introduced by the plaintiff as to the proper method of constructing a hole for the purpose of underpinning the foundation of the chimney, and as to the proper method of shoring or bracing it. The defendants' objections to that class of testimony, and their exceptions to its admission, were well taken. (*Harley* v. *B. C. Mfg. Co.*, 142 N. Y. 31; *Schneider* v. *S. A. R. R. Co.*, 133 N. Y. 583; *Dougherty* v. *Milliken*, 163 N. Y. 527.) The evidence clearly demonstrates the plaintiff's opportunity to know, and his actual knowledge of, the place and its surroundings, and he must be held to have assumed the risks of the employment at that place, whatever they were. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *Shaw* v. *Sheldon*, 103 N. Y. 668; *Cahill* v. *Hilton*, 106 N. Y. 512; *Crown* v. *Orr*, 140 N. Y. 450; *Kaare* v. *T. S. & I. Co.*, 139 N. Y. 369; *Appel* v. *B., N. Y. & P. Ry. Co.*, 111 N. Y. 550; *Horrigan* v. *N. Y. C. & H. R. R. R. Co.*, 7 App. Div. 377; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 274; *Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520; *De Forest* v. *Jewett*, 88 N. Y. 264.) The situation disclosed by the evidence was so open, and the liability to accident arising therefrom so plain to ordinary observation, and the plaintiff having in fact knowledge thereof, he was chargeable with contributory negligence in continuing at work, if it be found as a fact that the place was dangerous. (*Crown* v. *Orr*, 140 N. Y. 450; *Swenson* v. *M. I. O. Co.*, 24 N. Y. S. R. 43; *Jenkins* v. *M. I. O. Co.*, 32 N. Y. S. R. 866; *Marsh* v. *Chickering*, 101 N. Y. 396; *Hart* v. *Naumburg*, 123 N. Y. 641.)

*Eugene D. Flanigan* for respondent. It was the absolute duty of defendants to make the sides of this hole reasonably safe before ordering plaintiff to commence work in it, and plaintiff had the right to assume that when he went into this hole in obedience to the personal command of defendants, that they had performed their full duty towards him. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546; *Willy* v. *Mulledy*, 78 N. Y. 310; *Harroun* v. *B. E. L. Co.*, 12 App. Div. 126; *Noise* v. *Smith*, 28 Vt. 59; *Mickee* v. *Wood M. M. Co.*, 70 Hun, 456.) The injury resulting from extraneous causes, plaintiff cannot be held guilty of contributory negligence. (*Ryan* v. *Fowler*, 24 N. Y. 410.) There was nothing about the situation as presented to plaintiff to apprise him of any danger in working in this place. (*Kain* v. *Smith*, 25 Hun, 146; *Hawley* v. *N. C. Ry. Co.*, 82 N. Y. 370; *Baird* v. *Doyle*, 6 N. Y. Supp. 517; *Ryan* v. *Fowler*, 24 N. Y. 410; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Davidson* v. *Cornell*, 132 N. Y. 228; *Swenson* v. *Mahopac I. O. Co.*, 24 N. Y. S. R. 43; 117 N. Y. 637; *Jerome* v. *Q. C. Cycle Co.*, 163 N. Y. 351.) Plaintiff did not assume any risks arising from the personal negligence of defendants. (Thomas on Neg. § 744; *Lofrano* v. *N. Y. & Mt. V. W. Co.*, 55 Hun, 452; *McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Gates* v. *State*, 128 N. Y. 221; *Murphy* v. *B. & A. R. R. Co.*, 88 N. Y. 146; *Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 171; *Ardesco Oil Co* v. *Gibson*, 63 Penn. St. 146; *Walsh* v. *Peet Valve Co.*, 110 Mass. 23.) The assumption of risks implies a knowledge of the danger. Plaintiff could not assume any risks until defendants had performed their duty to him by informing him of the dangers. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Knisley* v. *Pratt*, 148 N. Y. 372; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546; *Keegan* v. *W. R. R. Corp.*, 8 N. Y. 175; *Warner* v. *E. Ry. Co.*, 39 N. Y. 468; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 38.) The hypothetical questions put to witnesses were proper. (*Curtis* v.

*Gano,* 26 N. Y. 426; *Pullman* v. *Corning,* 14 Barb. 174; *Del Sejnore* v. *Hallinan,* 153 N. Y. 274; *Kranz* v. *L. I. Ry. Co.,* 123 N. Y. 1; *Reynolds* v. *Robinson,* 64 N. Y. 589; *Schneider* v. *S. A. R. R. Co.,* 133 N. Y. 583; *Conrad* v. *Vil. of Ithaca,* 16 N. Y. 161; *Bellinger* v. *N. Y. C. R. R. Co.,* 23 N. Y. 42; *Baird* v. *Daly,* 68 N. Y. 547; *Schwander* v. *Birge,* 46 Hun, 66.)

O'BRIEN, J.  The jury rendered a verdict of three thousand dollars for the plaintiff as compensation for the injury received on the twenty-fifth day of September, 1894, while in the defendants' service.  At that time the defendants, who were general contractors, were engaged in preparing the foundation for a building to be used as a power house by the Albany city water works.  It seems that it was necessary, in order to get a proper foundation, to excavate a trench to the depth of about thirty-one feet below the surface of the ground.  This trench was not only of the depth stated but very wide, and it became necessary to shore up or brace the sides in order to keep the earth in place.  In carrying along this trench the contractors passed near the foundation of a chimney stack one hundred and ten feet high, and it was necessary in order to secure the chimney to support its foundation on the side next to the trench.  This chimney was intended to be part of the structure when completed and rested upon a foundation which extended twenty feet below the surface of the ground and extended along the line of the trench about twenty feet.  In excavating the main trench opposite the stack the wall of the trench on that side had been carried down at an angle so as to leave what is called a "batter" wall to support the stack.  The main trench itself, as already stated, was thoroughly supported by timbers, and no accident happened for want of any care in that respect.  But it became necessary to support the chimney in some way, as it was feared that, on account of the depth of the main trench, it would be undermined and fall.  In working under the foundation of the chimney narrow cuts three or four feet wide were made

starting out from the bottom of the main trench and running at
right angles therefrom through the batter wall and three feet
under the edge of the foundation of the chimney. These nar-
row cuts extended upwards to within about a foot of the bot-
tom of the foundation of the chimney, and as fast as they were
made, one after another, they were filled in with masonry
work forming a pier so as to keep the chimney foundation at
all times secure. The earth between the tops of the cuts and
the bottom of the foundation is described as hardpan, but
water had been running down from the top and sides for some
time, and thus the batter wall, near the chimney foundation,
is supposed to have weakened and disintegrated from the
effects of the water which percolated through it. The plain-
tiff was a mason's helper and was at work for the defendants
in that capacity at the time of the accident. He was ordered
to go down into a cut which had been made the night before,
in which to place one of the masonry piers under the founda-
tion and to level off the bottom in order to prepare to start
the pier. One of the defendants went with him down to or
near the bottom of the main trench. It does not appear that
the plaintiff was ever in this particular place before, or that he
knew anything about it. He obeyed the orders of the master
and went into the cut and commenced to level the bottom,
and while doing so the earth from the top and from one side
of the cut near the top fell upon and injured him, and for this
injury a verdict was awarded to him by the jury.

The plaintiff's action is based upon the claim that the usual
and proper precautions were not taken by the defendants to
support the overhanging earth between the top of the cut and
the bottom of the foundation, and that he was not provided
with a reasonably safe place to work in under the circum-
stances. The defendants were aware of the actual situation
and all of the dangers that attended the performance of work
in these narrow cuts after the earth above and upon the sides
had been saturated with the percolating water. It was, there-
fore, a question of fact for the jury to determine whether the
defendants had performed the duty imposed upon a master to

provide the servant with a reasonably safe place in which to perform his work. The court could not have determined that question one way or another as one of law, and it was, therefore, properly submitted to the jury. It is said, however, that the plaintiff should not have been permitted to recover, as under the doctrine of obvious risks he assumed whatever danger there was in doing the work. On this point it must be borne in mind that the plaintiff was unacquainted with the actual perils of the situation. He had not been required, so far as the proof shows, to perform any service of this kind in such a place before. When directed by the master to go into the trench and level it off in order to prepare for the masonry work, he simply obeyed the order. The servant is bound by his contract to obey all reasonable and lawful orders of his master, and the plaintiff, after receiving the order, had to determine in an emergency whether he should obey or refuse. It cannot, I think, be said as matter of law, under these circumstances, that the servant was guilty of contributory negligence, or that he assumed the risk of the dangers incident to a situation with respect to which he could know nothing beyond what was visible at the time. He could not have known, for instance, that the surrounding earth had been saturated with percolating water, or that the walls of the trench or the earth of the arch above had been disturbed or weakened from any such cause. It was, therefore, a fair question for the jury whether the servant was guilty of any carelessness which would bar his right of recovery, or whether he, in obeying the master, had the same knowledge of the dangers incident to the situation that the latter had. On both these questions, therefore, the case was properly submitted to the jury.

It is strenuously argued, however, by the learned counsel for the defendants that this judgment should be reversed upon an exception taken at the trial to certain testimony offered and received in behalf of the plaintiff. The plaintiff's counsel called a civil engineer of eight years' experience in his profession, and who, it appears, had charge of work of like character, and was at the time superintending an excavation about

eight miles and a half in extent.    The counsel propounded to
this witness a hypothetical question embracing all the facts
disclosed by the plaintiff's testimony, and concluded with the
inquiry whether, in his opinion, that was a proper method of
constructing the hole or trench for the purpose of underpin-
ning or supporting the foundation of the chimney.    One fact
assumed in this question was that neither the sides nor the
top of the trench were shored up or supported in any way.
This question was objected to on the ground that it was
not matter of expert opinion and also on other grounds not
material at this time.    The objection was overruled and the
defendant's counsel excepted.    The witness answered the
question in the negative, that is, his opinion was adverse to
the defendants.    The plaintiff's counsel followed this ques-
tion with another, to the effect that assuming the same state
of facts as in the last question, and further assuming "that
you take this excavation at a time when nothing had been
done within the bank spoken of as the batter bank under-
neath the foundation; how in your opinion ought that exca-
vation to have been made so as to be safe for persons work-
ing in the bottom of the same?"    This question was objected
to on the same ground, and there was the same ruling and
exception.    The answer of the witness was that such excava-
tions ought to be made the necessary width for the pier that
was required and the sides carried down vertically, the earth
cleaned off from the bottom of the original foundation, that
is, the chimney foundation, and the sides braced; that the
bracing should be put in as they went down with the exca-
vation, "that is, put in the bracing in the excavation under
the chimney and carry it down the full length of the exca-
vation; put in a brace right where the new excavation joined
the original foundation wall; put in a crosspiece there, another
one down about four feet; have planks on the side up against
which these braces would rest."    The witness added, "I
would place these planks with reference to the face of the
chimney foundation beneath it; under it; under the chimney
foundation; one on either side and then a crosspiece.    The

effect upon the sides of the hole of shoring and bracing would be to have rendered it safe for a man to go in there to work; bracing and shoring is usual in like cases in other work of similar character."

I do not think that it was error on the part of the learned trial judge to permit an inquiry of this character to be made of a witness who was clearly an expert. The learned counsel for the defendants contends that it was, and his argument is based upon the proposition that the facts should have been stated and then the jury permitted to decide for themselves. This is the usual argument urged in all such cases. There is, doubtless, some confusion in the cases with respect to the admissibility of the opinions of experts upon issues such as are involved in this case, but, I think, the ruling of the learned trial judge was correct, both upon principle and the great weight of authority. It is quite probable that there was not a man upon the jury, unless he happened to be an expert, who would have attempted to solve the problem of properly supporting and sustaining the chimney in question without calling to his aid some expert advice from an engineer or some person of experience on such a subject. The common mind, as we know, is not always equal to the proper solution of such a problem in such an emergency, and the counsel and advice of engineers or persons of experience in such matters is always valuable and desirable, and it is quite plain that the tendency of courts and writers on the law of evidence is in that direction. A learned author of a standard work upon the law of evidence has recently examined the question with much care and has collected authorities bearing upon the question from many sources. (1 Greenleaf on Ev. [ed. 1899] § 441.) He lays down the rule on the subject of expert opinions as evidence in the following manner: " Since the so-called expert will, by hypothesis, usually be better able than the jury to draw inferences on such matters, it occurs in practice that experts are usually able to be helpful with their opinions and are, therefore, usually, but not necessarily, allowed to state them. Thus, in practice, opinions are receivable, *first*, from

persons having special skill (whether the data in question have been personally observed by them or are stated to them) whenever that special skill enables them, better than the jury, to draw inferences on the subject; *secondly*, from persons who have no special skill, but have personally observed the matter in issue, and cannot adequately state or recite the data so fully and accurately as to put the jury completely in the witness' place and enable them equally well to draw the inference. The absurdities which disfigure the application of the rule come chiefly from a too illiberal interpretation of the latter notion, *i. e.*, it is frequently ruled that a personal observer can sufficiently state the observed data without adding his inference, although a just view of the situation would recognize that too much credit has been given to the witness' powers of narration, and that in truth it is impossible for the data to be fully recited. For instance, rulings that a witness may not state whether a person's answer was made in a jocular or a serious manner, whether the conduct of the parties evinced a mutual attachment, and the like, err in this manner. A more liberal tendency in this respect seems to be making its way in recent times ; but the reports are overloaded with decisions that ought never even to have been called for ; a prominent feature in the application of the rule is the petty and unprofitable quibbling to which it gives rise. It ought first, however, to be noticed that certain reasons or tests sometimes put forward for this rule are unfounded. (1) It is said that the witness is not to ' usurp the functions of the jury.' The answer is simply that he is not attempting to usurp them — not attempting to decide the issue and thus usurp their place, but merely to give evidence, which they may or may not accept, as they please. Even though his opinion is admitted, it is not decisive, especially when it is considered that opinions might be given by witnesses on both sides. (2) It is sometimes said that an opinion is not to be offered on ' the very issue before the jury.' But this, as once remarked, would rather ' seem to be a very good reason for its admission.' If the witness can add instruc-

tion over and above what the jury are able to obtain from the data before them, it is no objection that he refers to the precise matter in issue." These propositions of the learned author are well sustained by the authorities cited ; for instance, the case of *Cornell* v. *Green* (10 S. & R. 16), where it was said : "Wherever the facts from which a witness received an impression are too evanescent in their nature to be recollected, or are too complicated to be separately and distinctly narrated, his impressions from these facts become evidence."

In *Prendible* v. *C. R. Mfg. Co.* (160 Mass. 131) it is stated as follows: "We are of opinion that a person who has made a special study of the strength of materials and the proper mode of building structures to sustain weight may be allowed to give his opinion as to whether a staging erected in a specified way can safely be trusted to carry a particular load. That was the substance of the hypothetical question put in this case. Although by reason of its form it did not direct the attention of the witness to the elements of fact involved so particularly as it might have done, it was not so objectionable as to be incompetent."

In 1 Smith's Leading Cases, 286, the admissibility of expert evidence is stated as follows: "The opinion of witnesses possessing peculiar skill is admissible whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance."

In *Turner* v. *Haar* (114 Mo. 345) it was held that the question as to what effect the running of machinery on the third floor of a building would have toward weakening the building and rendering it insecure and dangerous was a subject beyond general knowledge, and one about which an expert might give an opinion.

In *Continental Ins. Co.* v. *Pruitt* (65 Tex. 125) it was held that a builder might give his opinion as to whether the walls of a building were sufficient to sustain it.

In *Buffum* v. *Harris* (5 R. I. 243) it is stated in the opinion that "The business of a civil engineer in superintending the

75

construction of milldams and other guards against the flow of water makes him practically acquainted with the relative capacity of our different common soils to resist the percolation of water, and the opinion of such a witness might be given on the subject."

In *Clark* v. *Willett* (35 Cal. 534) it was held that the proper method of proving the effect of tunneling near other property, with respect to causing the earth to settle and slide, was by taking the opinions of witnesses acquainted with the character of the soil and the surrounding circumstances.

It seems to me that the decisions in the courts of this state, and especially in this court, amply justify the rules and principles contained in the authorities cited. In some of them it will be seen that the opinions of experts have been received in issues much more likely to be comprehended by the jury from a simple statement of the facts than in the case at bar. Thus it has been held that it is no objection to this class of evidence that the question propounded to the witness is the precise question the jury is to determine. (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424.)

The opinion of an expert may be competent by stating to him a hypothetical case, taking in some or all of the facts stated by witnesses and claimed by counsel, putting the question to be established by their evidence, and when the question is thus stated the witness has in his mind a definite state of facts, and the province of the triers, whether referees or jurors, is not interfered with. They will determine whether the facts exist which are thus assumed and thus give the opinion such weight as they think it is entitled to, with a full knowledge of the facts upon which it is based. (*Reynolds* v. *Robinson*, 64 N. Y. 589.)

Whether in any case a witness is qualified to speak as an expert is a fact to be determined by the court upon the trial preliminary to his testifying, and ordinarily the decision of the trial court on this point, when there are any facts to support it, is not open to review in this court. (*Nelson* v. *Sun Mutual Ins. Co.*, 71 N. Y. 454.)

In *Curtis* v. *Gano* (26 N. Y. 426) the issue was whether three threshing machines manufactured by the defendants were constructed in a good and workmanlike manner. The only question which seems to have been put to the witnesses in that case was the following : " Were the three machines built in a good and workmanlike manner ? " And although there was no proof of the particular facts which rendered the machines defective, the court held that the answer was competent, on the ground that the question was one which came within the exceptions to the ordinary and general rule forbidding the reception of evidence of a witness' opinion. It was a matter of skill, requiring peculiar knowledge of the article and judgment respecting it. It seems to me that if it was competent to prove that the farmer's threshing machines of forty years ago were not built in a good and workmanlike manner by the opinion of an expert, without stating any facts whatever, that the question in the case at bar was clearly admissible.

In *Pullman* v. *Corning* (9 N. Y. 93) the witness was permitted to express an opinion as to whether a cobble stone wall was properly built. It is needless to say that it would be much easier for the jury to determine whether the wall was or was not suitably built after learning all the facts, than for the jury in this case to determine whether this piece of tunnelling under the foundation of a chimney more than thirty feet below the surface of the ground was properly guarded and protected with reference to the safety of the workmen.

So an engineer, having experience in the erection of bridges, was permitted to testify under objection and exception that it was not customary to have guards of any kind on drawbridges, and this court held that the question was proper. (*Hart* v. *Hudson River Bridge Co.*, 84 N. Y. 56.)

So it has been held competent to ask a cabinetmaker, who had performed part of the work in controversy, whether the work was a good job and well done. ( *Ward* v. *Kilpatrick*, 85 N. Y. 414.)

So this court has held upon an issue concerning the value of a growing crop damaged by the overflow of water, that it

is competent to ask the witness conversant with such crops how much in his opinion a given field would yield to the acre. (*Phillips* v. *Terry*, 3 Abb. Ct. of Appeals Dec. 607.)

So it has been held that the opinion of an expert is admissible upon an issue as to whether a scow was seaworthy or not. (*Baird* v. *Daly*, 68 N. Y. 547.)

So it has been held that a hypothetical question need not include all the facts in evidence, and is good as against the objection that it does not correctly state the facts, if the proof justifies the assumption of the facts covered by the question. (*Cole* v. *Fall Brook Coal Co.*, 159 N. Y. 59.)

So an expert witness was permitted to state against objection and exception that a particular test applied by parties to fire hose was not a fair one. (*Chicago* v. *Greer*, 76 U. S. 726.)

So it has been held that it is competent for an expert to express an opinion as to whether it would be safe or prudent for a tugboat to tow three boats abreast in a high wind upon a bay or arm of the sea. (*Transportation Line* v. *Hope*, 95 U. S. 297.)

This review of the cases and authorities seems to me to amply justify the assertion that the question propounded in the case at bar to a civil engineer embraces a proper inquiry. The contention that the jury could have drawn the conclusion as well as the engineer is not, I think, correct. It is very difficult for a witness to picture to a jury in words the real situation that confronted the plaintiff at the moment that he stepped into the trench by the direction of the master. It would be still more difficult for them to determine what should have been done in order to make the place where the plaintiff was injured reasonably safe and suitable for the workmen. To say that an engineer' of experience in such matters could not assist the jury by an expression of opinion would be to ignore well-known facts and to disregard the principle upon which the opinions of experts are received in evidence. It does not follow that because the rule permitting experts to give opinions has been often abused, especially by medical experts and those claiming to be skilled in handwrit-

ing, that the opinion of an honest and intelligent engineer upon an issue of the character involved in this action was not competent.

The authority which is cited by the counsel for the defendants to support his argument that the ruling of the court in this case admitting the testimony of the engineer in answer to the question as propounded to him was legal error, requiring a reversal of the judgment, is the recent case of *Dougherty* v. *Milliken* (163 N. Y. 527). The decision in that case has no bearing on the question now before us, and for these reasons: (1) There was not a single fact in that case, as the learned judge stated, upon which the charge of negligence could rest, and that circumstance alone would have justified the decision (p. 532). (2) There were no facts shown upon which an expert could properly base an opinion. It was admitted that if it had been shown what amount and the kind of strain the eyebolt which gave away had been subjected to, and its size, inherent tensile strength and the character of the fastenings to the base, that there would then be a case for the opinion of an expert (p. 534.) (3) It was held that the questions were insufficient and improper in form to lay the foundation for even such opinions as were given. Neither the size, capacity or material of the eyebolt was described, and, hence, there was no basis for an opinion. The opinion of an expert in order to be admissible must be based upon facts either within his own knowledge, or presented to his mind through the form of a hypothetical question.

All the elements for an opinion that were absent from that case are notably present in this. Here the facts and the whole situation are disclosed, and an experienced engineer is asked to state how the danger incident to such a place could have been reasonably obviated to insure the safety of the workman. That was the theory upon which the question was asked and answered, and it seems to me that no reasonable mind can fail to see that the opinion of an engineer under such circumstances would be helpful to either court or jury. It is probably true, as already observed, that no member of this court, or of the

jury that tried the cause, if confronted with such a problem in their own affairs as that presented to the defendants, when they undertook to support this chimney, would have disdained the advice of a competent engineer. Indeed, it may be safely asserted that none of them would have proceeded without it, and if his advice and opinion would have been valuable, then how can it be said that it was not admissible upon the issue in this case, which was whether the contractors had really met the situation with reasonable prudence and care. When there is a question with respect to the safety of what may be called a tunnel through the earth thirty feet below the surface, where men are sent to work, I think it is open to either party to call engineers familiar with such work, and the methods of insuring the safety of the place, and take their opinions with respect to such methods.

The cases in which opinions are excluded are well illustrated by the discussion in *Ferguson* v. *Hubbell* (97 N. Y. 507). There the negligent act charged was setting fire to fallow land at a dry season of the year when the wind was blowing a strong gale. The defendant proved the condition of the land, the state of the weather and the velocity of the wind with all the circumstances. Not content with all that, he called several witnesses and inquired of them whether in their opinion it was a proper time to burn the fallow. He succeeded before the jury, but the judgment in his favor was reversed upon exceptions taken to this class of testimony. Now that was a case where the jury could not, after hearing all the facts, be enlightened by the opinions of farmers to the effect that the fire was or was not properly set. But there is a wide difference between the nature of the issue in that case and the one at bar. The circumstances under which a fallow may be burned are known of all men, but the conditions that are necessary to insure the safety of a workman in a narrow tunnel thirty feet under the surface of the ground are not. There is doubtless a growing tendency in the profession to press what is called expert evidence into cases and questions where it has no proper place. The practice is not to be com-

mended, since it frequently happens that such professional zeal endangers a case on appeal that may be otherwise meritorious. It may be that in this case the plaintiff's proof would have been as strong without the testimony in question as it is with it, but now that the testimony has been introduced I think this court cannot say as matter of law that it was inadmissible. I think that the ruling of the learned trial judge was correct, and that the judgment should be affirmed, with costs.

GRAY, J. (dissenting). I must dissent from the opinion in this case. While I have my doubts upon the proposition that it was a question of fact for the jury to determine, whether the defendants had performed their duty to provide a reasonably safe place for the plaintiff to work in, and am inclined to think that the latter assumed the risk of the situation, I, nevertheless, shall not dissent upon that ground. I think that it was error to admit the opinion evidence, which was given by the civil engineer. The opinion of Judge O'BRIEN is misleading in its discussion of that question, in so far as the situation is concerned which the facts revealed. It is evident from that opinion that the learned judge is impressed with the idea that the danger of the place, in which the plaintiff was at work, was connected with the work of underpinning the chimney stack; whereas, in fact, it was not.

The facts are briefly these : that, while preparing for the foundation of a building to be erected by them for the Albany water works, the defendants excavated a deep trench, within some twelve feet of a chimney stack, about 112 feet in height, and at a depth greater than that of the foundation of the chimney, by eleven feet. In order that that foundation might be strengthened and supported by an underpinning, or piers of masonry, they made a number of tunnels, or cuts, through the earth, from the trench to points under the chimney foundation, and as each tunnel was made the pier was constructed therein. These tunnels were irregularly arched and not shored

up, or braced by timbers. The soil was of the nature of "hardpan," which is dissolved, or disintegrated, by the action of water. For some time previous to the occurrence in question, water had been observed trickling upon, and spreading over, the ground between the chimney and the trench, and to its loosening effect upon the soil was attributed the falling in of the earth of the tunnel in which the plaintiff was working. The plaintiff had been ordered to go into one of the tunnels and to level off the bottom, preparatory to the building of the pier. While working there, according to his evidence, he observed water dripping upon him from overhead. Shortly after he had commenced to work, the earth from the top and from the north side of the tunnel fell upon him and produced the injuries complained of. There is nothing in the evidence to show, and it is not claimed, that the fall of the earth was due to any other cause than the loosening, or disintegrating, of the soil through the action, or the percolation, of the water from above. Indeed, the cause of the falling of the earth is stated in the respondent's brief to have been "by reason of this running water eating its way through the ledge just north of the irregular arch on the north side of the hole causing it to become loosened from the adjoining mass and fall by its own weight." Questions concerning the construction of an underpinning for the chimney foundation and the manner of proceeding therewith had nothing to do with the issue. The jurors had the evidence very fully before them of the facts which had been observed by witnesses, relating to the nature of the soil, to the continuous trickling of water upon, and its percolation through, and its effect upon, the soil and to the manner in which the cut, or tunnel, through the ledge, or bank, of earth from the trench was made. The evidence showed, for instance, that while the trench, or main excavation itself, was braced with timbers, the tunnel had not been treated in the same manner, and that what had been deemed sufficient for its temporary protection was to arch it over. The situation was a very simple one and was clearly exposed by the evidence, and I am quite unable to see what question

of science, or of a nature beyond the apprehension of the lay
mind, was involved in the determination of the issue, which
justified, or made necessary, the admission of opinion evidence.
The hypothetical question upon the facts, which was put by
the plaintiff's counsel to the witness, a civil engineer, con-
cluded with the inquiry concerning the place where the plain-
tiff had been working, whether, in his opinion, he would say
"that was a proper method of constructing that hole for the
purpose of underpinning that foundation ? "   The witness
was permitted to answer that question, over the objection of
the defendants' counsel, and then, on the same assumed state
of facts, the following question was asked : " How, in your
opinion, ought that excavation to have been made so as to be
safe for persons working in the bottom of the same."   This
question was also objected to, but the objection was overruled,
and the exceptions to these rulings raised the serious question
in the case.

The prevailing opinion is misleading in conveying the
impression that this opinion evidence was proper and necessary
by reason of the problem presented of underpinning this
chimney stack, and authorities are cited to support the view
that the opinions of persons, who have made especial study of
the strength of materials, or of the proper mode of building
structures to sustain weight, or of questions concerning struc-
tural or architectural strength, are proper.   The authorities,
however, are not applicable to such a commonplace and every-
day state of facts as that which this case presented.   There
was nothing in question here but the making of a temporary
hole, or tunnel, through a ledge of earth.   Under the circum-
stances detailed, there was nothing which necessitated the
opinion of a civil engineer, or of any expert in difficult con-
struction work, in order that the jurors might comprehend the
question, and without which they would be incompetent to
draw their conclusions.   It cannot, reasonably, be said that the
description of this hole, or tunnel dug in the earth, would have
conveyed an imperfect idea of its safety.   Extensions of the
rule which permits of opinion evidence are not to be favored.

The general rule, as to the admissibility of such evidence, is that persons having technical or peculiar knowledge upon certain subjects are allowed to give their opinions, when the question involved is such that the jurors are incompetent to draw their own conclusions from the facts, without the aid of such evidence.  (12 Am. & Eng. Encyc. Law [2d ed.], 432.)  In the language of Judge EARL, in the case of *Ferguson* v. *Hubbell* (97 N. Y. 507), " Where the facts can be placed before a jury and they are of such a nature that jurors, generally, are just as competent to form opinions in reference to them and draw inferences from them, as witnesses, then there is no occasion to resort to expert or opinion evidence.  To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eye-witnesses, or to be as capable to draw conclusions from them, as some witnesses might be ; but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them and comprehend them sufficiently for the ordinary administration of justice."  To hold that the opinion evidence, in this case, was properly admitted, in my judgment, is to make a wide departure from the rule and may create a troublesome precedent in the future.  I think that the jurors were quite competent to understand the facts about this every day occurrence of tunneling through the ground and to decide the issue between the parties upon their own judgments.  It is impossible to say that the admission of this opinion evidence may not have prejudiced the defendants, and, for the error committed in that respect, I think that the judgment should be reversed and that a new trial should be ordered, with costs to abide the event.

HAIGHT, CULLEN and WERNER, JJ., concur with O'BRIEN, J., for affirmance ; PARKER, Ch. J., concurs with GRAY, J., for reversal ; LANDON, J., not sitting.

Judgment affirmed.