Fuchsberg, J.
(dissenting). In my opinion, there was no error in the admission of the testimony given by the lawyer-experts in this case, the two called on behalf of the plaintiff as well as the one called on behalf of the defendant. Therefore, a new trial is not required. There should be an affirmance instead.
Specifically, I find it difficult to understand why, if as the majority holds, expert testimony is proper to identify and evaluate considerations relevant to personal injury automobile accidents in general, it is not admissible when addressed to the particular accident case whose faulty management by the defendant is the basis for the bad faith action before us, especially since the particular is far more likely to be relevant to the issues than is the general.
Basically, the admissibility of the testimony of an expert is governed by the answers to the following three questions: "1. Is the subject concerning which he is to testify, one upon which the opinion of an expert can be received? 2. What are the qualifications necessary to entitle a witness to testify as an expert? 3. Has the witness those qualifications?”, each of which is generally to be resolved by the trial court (Richardson, Evidence [10th ed], § 367, pp 339-340, quoting Jones v Tucker, 41 NH 546, 547).
Since the excellent qualifications of the expert witnesses in the case before us are acknowledged, I concern myself here with the first question only, i.e., whether the matters on which the experts testified were ones upon which expert testimony should have been received. In answering that question, I begin by asking not only what issues were to be decided at the bad faith trial, but also what were the precise evidentiary matters on which those issues were to be decided.
Thus, while the ultimate issue was whether the defendant has acted in bad faith, the determination of that issue, in turn, required, among other things, the assessment of the reasonably anticipatable result of a trial of the particular underlying negligence action here, both as to liability and, if that issue were to be decided for the plaintiff, as to the amount or range of damages to be anticipated. Relevant also *150 would be the degree of probability that those results would ensue.
Advice as to these factors by their very nature would, most relevantly, have to relate to the particular circumstances peculiar to the negligence case involved. Many of those factors are not well understood by laymen. Indeed, their very existence may be completely unknown to the uninitiated.
Let us consider a few examples. For instance, a particular automobile accident case tried in urban Kings County before a jury of apartment dwellers who do all their traveling by subway or bus may face an entirely different prospect than will the identical case tried in more rural Cayuga County before a jury of car and home owners concerned with their liability insurance rates. Insurance people and experienced trial lawyers understand that; both settle their cases for amounts that take it into account, and the former fix their rates accordingly. Nor do either ignore the identity of a particular defendant; in the real world, whether the owner of a car is a giant corporation which nightly advertises its might on television, or whether he is John Smith, factory worker, does make a difference. Also, the greater or lesser penchant of appellate courts in a particular geographical area to exercise their power of remittitur is a practical consideration which any insurance representative, but no jury, unless advised, would be likely to take into account.
Of course, litigants, witnesses and lawyers are not stereotypes. Their impact varies from witness to witness and case to case. Whether an important witness is a preacher or a prostitute matters much, as it should. The personality, occupation and speech of a particular plaintiff or of a particular defendant will color credibility, whether for better or worse. Realistically, even the experience, skills and conscientiousness of the particular lawyers engaged by the parties make a difference. Under our adversary system, it may give one party a definite advantage over the other. Even in the presentation of the injuries, one lawyer in a personal injury case may proceed as though a broken leg was just a broken bone; to another it is also an injury to muscles, ligaments, nerves and blood vessels, to which the trauma has simultaneously done its most lasting damage. Indeed, insurance companies and their attorneys routinely consider such matters in evaluating their risks. They would be derelict to ignore them when acting in their *151 own immediate interests; their own conduct must thus be measured by the same kind of expertise.
Expert testimony on such matters, it appears to me, is not only entirely or in part "peculiarly within the knowledge of men whose experience or study enables them to speak with authority”, but the conclusions to be drawn from it also are "not within the range of ordinary training or intelligence”, the tests of Doughtery v Milliken (163 NY 527, 533) for admission of expert testimony to prove facts and conclusions, respectively. Such "experience”, "knowledge”, "study” and "training” appear at odds with the majority’s puzzling dichotomy between "exposure” and "expertise”. (See McCormick, Evidence [2d ed], § 13, p 30.)
Furthermore, the admissibility of expert testimony should not be dependant on its indispensibility. Professor Wigmore, after criticizing ancient exponents of a more restrictive rule, particularly Ferguson v Hubbell (97 NY 507, 513), on which the majority here has posited much of its holding, puts it as follows: "But the only true criterion is: On this subject can a jury from this person receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject and is not fixed or limited to any class of persons acting professionally”. (7 Wigmore, Evidence [3d ed], § 1923, p 21 [emphasis in text].) Other writers (Ladd, Expert and Other Opinion Testimony, 40 Minn L Rev 437, 443 ["There are many matters * * * about which the triers of fact may have a general knowledge, but the testimony of experts would still aid in their understanding of the issues”]) and the Federal Rules of Evidence (rule 702 [in US Code, tit 28, Appendix]) also endorse an approach that takes a realistic view of the need for expert testimony in today’s complex society. Weinstein’s Evidence (vol 3, par 702 [01], p 702-9) states the modern rule precisely: "Doubts about whether an expert’s testimony will be useful should generally be resolved in favor of admissibility * * * The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberation”.
Interestingly, it may be questioned whether the doctrine that such testimony should be viewed with an overriding concern that it "may intrude on the province of the jury to draw inferences and conclusions”, as the majority suggests, was ever the law in New York. In Finn v Cassidy (165 NY 584, 592), our court pointedly declared: "It is said that the *152 [expert] witness is not to 'usurp the functions of the jury.’ The answer is simply that he is not attempting to usurp them— not attempting to decide the issue and thus usurp their place, but merely to give evidence, which they may or may not accept, as they please. Even though his opinion is admitted, it is not decisive, especially when it is considered that opinions might be given by witnesses on both sides.”
Bender’s New York Evidence too (vol 3, par 100.01 [6], p 338) suggests the broader rule of admissibility: "The criterion under the better view is no longer the question of usurping the province of the jury, but simply whether or not an inference or conclusion to be drawn from, factual testimony is so obvious that it can be said that jurors are as equally competent to reach it as one who may be skilled through long experience. If the opinion of one so skilled may be of aid to the jury in reaching its conclusions, the opinion should be admissible”.
Turning specifically to expert testimony by qualified trial lawyers in "bad faith” actions, the issue is far from res nova (e.g., Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, cert den 410 US 931; Cornwell v Safeco Ins. Co. of Amer., 42 AD2d 127; Peterson v Allcity Ins. Co., 472 F2d 71; Worden v Tri-State Ins. Co., 347 F2d 336; American Cas. Co. of Reading, Pa. v Howard, 187 F2d 322; [testimony concerning local jury verdicts in cases similar to the one in question]; Hartford Acc. & Ind. Co. v Cosby, 277 Ala 596; Government Employees Ins. Co. v Grounds, 311 So 2d 164 [Fla]). Such testimony was admitted in all these cases. While the issue of admissibility was not raised in all of them, in every one in which it was the testimony was admitted broadly.
The Alabama, Florida and Federal Court of Appeals cases make that clear. In Hartford Acc. & Ind. Co. v Cosby (277 Ala 596, 603, supra) the Alabama Supreme Court said, "[This] testimony was not to the ultimate issues of the case, but was directed toward showing the reasonable probability that should the Carrie Smith [wrongful death action] case go to a jury there was a reasonable probability of a verdict in excess of the limits of the policy. Such proof was incumbent upon the plaintiff”. In Government Employees Ins. Co. v Grounds (311 So 2d 164, 168, supra), the Florida District Court of Appeals approved testimony "as to their opinion that the insurer did not meet the standard of care imposed upon an insurance company in such circumstances” (emphasis added). In Worden *153 v Tri-State Ins. Co. (347 F2d 336, 340, supra), the court sanctioned testimony regarding "all phases of investigation, preparation, the evidence presented at the trial, and the applicable law of the case” (emphasis added). (Accord American Cas. Co. of Reading, Pa. v Howard, 187 F2d 322, 328, supra.)
Similarly, in the case before us, the expert witnesses, in bringing their specialized knowledge to bear on the particular facts and circumstances here, provided no more than what Mr. Justice Cardamone, writing for the Appellate Division described as a "helpful aid to the jury in understanding and drawing proper inferences from the technical factual” matters which it had heard (47 AD2d, at p 421). Accordingly, there is no basis for disturbing the verdict, which should stand.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler and Cooke concur with Judge Jones; Judge Fuchsberg dissents and votes to affirm in a separate opinion.
Order reversed and a new trial granted, with costs to abide the event.