In the Matter of the Claim of MARIA CANNORA MASOCCO, Respondent, against GEORGE SCHAAF and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.

Third Department, December 30, 1931.

*Love & Keating* [*S. H. Millener* of counsel], for the appellants.

*John J. Bennett, Jr., Attorney-General* [*Joseph A. McLaughlin, Assistant Attorney-General,* and *Nathan M. Padgug* of counsel], for the respondents.

Rhodes, J. The appeal presents the question whether the claimant is the widow of the deceased employee. It is undisputed that the parties went through the form of a religious marriage ceremony performed by a priest in a church at Guilano Di Roma, Italy, on October 29, 1921; that they thereafter cohabited together and a daughter was born of the marriage, such child being now deceased. It is the claim of the appellants that a religious ceremony of marriage is not recognized by the civil authorities as having any validity. Witnesses for each party testified that common-law marriages are not recognized in Italy.

At a hearing herein a copy of the marriage certificate showing such religious marriage, certified or " legalized " by the mayor of the town and other civil authorities, was offered and received in evidence. The secretary of the Italian Consulate of the city of Buffalo was called as a witness and testified that he knew the Italian law very well but was not a lawyer; that he was familiar with the requirements of a legal marriage in Italy and that the certificate, in his opinion, established a legal marriage in Italy; that after a religious ceremony, in order to legalize it, the parties go to the City Hall and register; that unless the marriage had been recognized as legal by the civil authorities, they would not have certified to the said certificate of marriage; that when parties have been married in church, although the marriage has not been legalized, they do not live in adultery; " they are still married in the church but the law don't recognize them. They live that way because they are used to go to the priest and get married."

There was other testimony introduced in behalf of the claimant in relation to their having lived together as husband and wife and having openly sustained that relation.

In opposition the appellants produced the deposition of a solicitor and barrister in Italy which states that the religious ceremony in Italy had no validity whatsoever, and that the marriage certificate

referred to had no legal significance whatsoever. The deposition of another witness was produced who had served as Vice-Consul and holds the degree of Doctor of Law and Economic Sciences from the University of Milano. His deposition is to the same effect. The deposition of another witness was produced, who is described as an avvocato, and is of similar import. In addition the appellants called as a witness an attorney of the State of New York who stated that he has familiarized himself with the Italian law, but who apparently has not been admitted to practice in Italy. He produced a copy of what purported to be a pocket edition of the Five Italian Codes, including the Civil Code, which he bought at a book store in the Via Nationale at Rome. It purports to be a printed copy of the Italian statutes published under the authority of a proclamation issued in 1865, signed by the first King, Victor Emanuel. He testified that this was the law in force in the year 1923 and that the particular sections had not been amended except in so far as they were later modified by the Lateran Treaty of February, 1929, between the Vatican State and the Kingdom of Italy, and that under the Italian law no common-law relationship is recognized.

The foregoing is a resumé of substantially all the pertinent evidence produced by the parties.

The question now is whether there was sufficient evidence to support the finding of the Board that the claimant is the widow of the deceased.

The law presumes morality and not immorality; marriage and not concubinage; legitimacy and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence. (*Hynes* v. *McDermott*, 91 N. Y. 451; *Price* v. *Tompkins*, 108 Misc. 263; affd., 190 App. Div. 967; *Betsinger* v. *Chapman*, 88 N. Y. 487; *Matter of Matthews*, 153 id. 446.) The cohabitation, apparently decent and orderly, of two persons opposite in sex, raises a presumption of more or less strength that they have been duly married. (*Gall* v. *Gall*, 114 N. Y. 109.)

If there was competent evidence supplementing the presumption and supporting the validity of the marriage, then it is unnecessary to examine the evidence to the contrary attacking the marriage, even assuming that the opposing evidence was competent. The answer to this question depends principally upon whether the witness Fareri, the secretary of the Italian Consulate, was qualified to testify as an expert. Whether in any case a witness is qualified to speak as an expert is a fact to be determined by the court upon the trial preliminary to his testifying, and ordinarily the decision

of the trial court on this point, when there are any facts to support it, is not open to review in this court. (*Finn* v. *Cassidy*, 165 N. Y. 584; *Nelson* v. *Sun Mutual Ins. Co.*, 71 id. 454; *Slocovich* v. *Orient Mutual Ins. Co.*, 108 id. 56; *Stillwell Mfg. Co.* v. *Phelps*, 130 U. S. 520.)

In 22 Corpus Juris, 541, section 636, relative to the competency of a witness to testify as to the law of a foreign country, it is stated that it is not necessary that the witness should be a lawyer. (See, also, *American Life Ins. Co.* v. *Rosenagle*, 77 Penn. St. 507; *Vander Donckt* v. *Thellusson*, 8 C. B. 812.)

In *Lacon* v. *Higgins, alias Isaacs* (16 Eng. C. L. 425; 3 Starkie, 178), there was involved the validity of a marriage celebrated in France. The French Vice Consul, resident in London, was called as a witness. It did not appear that he was a member of the bar, but he was permitted to state that he was well acquainted with the laws and customs of France and testified concerning the validity of the marriage then in question.

In *Hecla Powder Co.* v. *Sigua Iron Co.* (157 N. Y. 437) the United States Consul at Santiago de Cuba testified as to the Spanish law applicable to the island of Cuba. It does not appear that the witness was an attorney; however, the opinion states that the testimony was received without objection.

In the case at bar the secrétary of the Italian Consulate at Buffalo testified that he was familiar with the requirements for a legal marriage in Italy and that the marriage in question was valid, and further, in substance, that when the parties to a religious ceremony appeared before the proper civil authorities and caused proof of said marriage to be registered or legalized, said marriage then became legal and was recognized as legal and valid by the civil authorities; that when a religious marriage is not certified by the civil authorities, the contracting parties do not live in adultery. The witness testified that he had been two and one-half years with the Italian Consulate and that as such secretary he transacts the more important business of the Consul; that in his opinion the certificate produced constitutes a legal marriage in Italy and that he was able to say this as an official of the Italian Consulate of the city of Buffalo; that the certificate in question was a document taken from the records of the church where this marriage took place and was legalized by the proper civil authorities.

From the foregoing it seems that the witness, in his official capacity, was competent to testify and express an opinion as to the validity of the marriage in question. His official duties would naturally require considerable familiarity with Italian law affecting

persons of Italian nationality and residence, rendering him peculiarly qualified to speak.

Unquestionably the facts in the record are sufficient to establish a valid common-law marriage under the laws of the State of New York. (*Gall* v. *Gall*, 114 N. Y. 109; *O'Gara* v. *Eisenlohr*, 38 id. 296; *Fisk* v. *Holding*, 163 App. Div. 85; *Matter of Hinman*, 147 id. 452; *Meister* v. *Moore*, 96 U. S. 76.) If on the whole record there was no competent evidence as to the laws of Italy, then the law of our State would be applied. It is a well-settled rule that the *lex fori*, the laws of the country to whose courts a party appeals for redress, furnish in all cases *prima facie* the rule of decision, and if either party wishes the benefit of a different rule, as for instance the *lex domicilii, lex loci contractus* or *lex loci rei sitœ*, he must aver and prove it. The courts of a country are presumed to be acquainted only with their own laws. Thus the laws of other countries are to be averred and proved like other facts of which courts do not take judicial notice. (*Monroe* v. *Douglass*, 5 N. Y. 447; *Brown* v. *Knapp*, 79 id. 137; *Savage* v. *O'Neil*, 44 id. 298.)

There is no presumption that the common law applies to Italy and other foreign countries in general. The presumption does apply, however, to England and the States which have taken the common law from England. (*Savage* v. *O'Neil, supra.*)

Our courts will not assume judicial knowledge of foreign laws (*Hanna* v. *Lichtenhein*, 225 N. Y. 579), but our courts will assume judicial knowledge of historical facts in relation to the laws of other countries as to whether they were derived from the Roman civil law or otherwise. (*Matter of Roberts*, 8 Paige Ch. 446.)

Section 391 of the Civil Practice Act permits proof of statutes of another country contained in a book or publication purported or proved to have been published by the authority thereof. Whether or not the proof of the authenticity of the Italian Code was strictly sufficient, it was received without objection, the only question raised being to the competency of the opinion of the witness Di Bartolo concerning the law of Italy. We may, therefore, treat the Italian statute as sufficiently proven. (*Taylor* v. *Chamberlain*, 6 App. Div. 38.)

The attempted interpretation of the statute by the appellants' witnesses is not controlling. The statute being in evidence, its construction was for the court. (*Bank of China, etc.*, v. *Morse*, 168 N. Y. 458.) (See, also, cases cited and discussed in the opinion in *O'Rourke* v. *Cunard Steamship Co., Ltd.*, 169 App. Div. 943.)

It will be observed that no decisions of the courts of Italy are cited. Neither are the provisions of the statute set forth in full in the record. So far as presented, they appear to govern the

manner of celebrating a civil marriage, but they do not in any wise refer to a religious ceremony nor specify the steps necessary to the recognition by the civil authorities of such religious marriage. Hence the statute, so far as set forth, does not necessarily cover the situation here presented. Its construction being the province of the court, the opinion of the witness as to its meaning was at best a conclusion of law. It may be remarked that an examination of the statutes of our State concerning marriage might give the impression that marriage in no other form is permitted here, but it has many times been held that a valid marriage may be contracted although none of the prescribed statutory requisites are followed. Similarly the Italian Code sheds no light on the method of validating a religious marriage, but it does not follow that there is no provision for its legalization. From the Lateran Treaty, known as the Concordat, effective in 1929, it appears that immediately after a religious ceremony the priest will draw the marriage certificate, a complete copy of which must be forwarded within five days to the commune in order that it may be entered in the register of the civil status. While it is claimed the treaty is not retroactive, it may be that it is simply declaratory of the theretofore existing practice and law of Italy.

So far as the opinion of appellants' witnesses as to the law is concerned, without reference to an attempted interpretation of the Code, such opinion has no more weight than the opinion of claimant's witness and the Board has seen fit to accept as a fact the testimony in behalf of the claimant.

Appellants further claim that the marriage was void because the parties were second cousins and that such marriage is prohibited by the Italian Code. The only evidence of relationship presented is the statement contained in the marriage certificate, and by the same document it appears that the necessary dispensation was obtained from the Apostolic See.

From the provisions of the Italian Code, printed in the record, it appears that the King, when grave reason exists, may dispense with these impediments. If, therefore, a proper dispensation was obtained from the religious authorities and a religious marriage was thereupon celebrated which has been recognized as valid by the civil authorities, that is sufficient here.

The finding of the Board as to the marriage of the parties is amply supported by competent evidence.

The award to the claimant should be affirmed, with costs to the Industrial Board.

All concur.

Award affirmed, with costs to the State Industrial Board.