THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FELIPE LÓPEZ REYES, Defendant and Appellant.

No. 15319. Argued February 2, 1953.—Decided April 21, 1954.

*Santos P. Amadeo* and *José Luis Méndez* for appellant. *José Trías Monge, Attorney General (Juan B. Fernández Badillo, Acting Attorney General* on the brief) and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Prosecuting Attorney Julio Fernández Cabrera, of the former District Court of Puerto Rico, Aguadilla Section, filed an information against defendant Felipe López Reyes charging him with the crime of rape, alleging that he had sexual intercourse with María Tacoronte Morales by force and violence, without her consent, who was not then and there his wife and who offered resistance, which defendant overcame by force and violence.

This case was tried by the court without a jury, defendant having waived his right to a trial by jury. Witnesses for the People of Puerto Rico were Dr. Felipe J. Achecar, the aggrieved party, María Tacoronte Morales, her brother, Miguel Tacoronte Morales, and her sister-in-law, Juana Miranda de Tacoronte. After the evidence of the People was heard, defendant's attorney moved for peremptory acquittal on the ground that the evidence adduced in order to corroborate the aggrieved party's testimony was insufficient to support the information. The presiding judge overruled that motion. Defendant offered no evidence and submitted his case on the evidence of the People. Thereupon the presiding judge proceeded to adjudge him guilty of the crime of rape. On the day set for pronouncement of sentence the defendant was sentenced to serve not less than two nor more than eight years in the penitentiary, at hard labor.

The evidence for the People established that in February,

1951 the aggrieved party, María Tacoronte Morales, lived in the ward of Mirasol of Lares in an outbuilding standing on a farm of her brother Miguel Tacoronte Morales; that the aggrieved party was paralytic, with hardly any movement in her legs, and walked on her knees. Although her age is 31 years, her mental age is estimated at about 12 years, due to her feeblemindedness. One day in February 1951, between seven and eight o'clock in the evening, the defendant armed with a "machete" entered her shack and threatened to kill the aggrieved party if she refused to surrender to him; thereupon he picked her up in his arms and carried her to the bed, tore off her clothes and had sexual intercourse with her. There is evidence of intercourse on two subsequent occasions, marked by the same degree of violence.

Although the evidence proves that the aggrieved party was visited by her nieces, who brought her meals every day, by her sister-in-law, who came to see her twice or three times a week, and by her brother, who used to go near the shack to look after some beehives, it also shows that the aggrieved party said nothing to them about her mishap with the defendant. She testified that she did not dare to tell her brother "because I was afraid he would punish me." When her sister-in-law found out that the aggrieved party was pregnant—that was eight months and a number of days after the month of February—she compelled the invalid to tell her what had happened. The aggrieved party then confessed that she was pregnant by the defendant, but that it was a secret "because he had threatened her if she spoke."

Two errors are assigned on appeal, to wit:

"1. The trial court erred in allowing Dr. Felipe J. Achecar to testify on the mental condition of the aggrieved party, whose capacity as psychiatric expert and psychologist was not established by the People nor accepted by the defendant, all the more when Dr. Achecar testified that he had not performed a mental examination on the aggrieved party but only a vaginal examination.

"2. The trial court erred in dismissing appellant's motion of acquittal, on the ground that no evidence was offered in order to corroborate the aggrieved party's testimony as required by Sec. 250 of the Code of Criminal Procedure of Puerto Rico, as amended by the Act of March 11, 1909 and construed by the decisions of this Court."

 Regarding the first assignment, the transcript of the evidence discloses that the witness' competence as a general practitioner and surgeon in the town of Lares was accepted. It also discloses that in that capacity he examined the aggrieved party, "a paralytic person, mentally retarded"; that the examination was made necessary by her pregnancy; that the indispensable vaginal examination was made and the pelvic measurements taken; that the doctor, being aware of her paralytic condition and that the fetus was not engaged, decided to send her to the District Hospital of Arecibo; that he observed a "certain idiotic condition" in the patient, that she was feebleminded, that she was able to distinguish between good and evil, but her mental age was about twelve years; that he was able to observe her because she "was also confined in the Hospital of Lares following childbirth; that after childbirth she was removed to the Hospital of Lares, since we were confronted with the problem of where to send her"; that she is not insane— "she is mentally retarded" and "could answer as a twelve-year-old person would." It cannot therefore be asserted that all Dr. Achecar did was to perform a vaginal examination on the aggrieved party. It was necessary for the physician to look into a certain evident state of paralysis. A certain manifest state of idiocy was also observed before and after childbirth.

The first error narrows down to a determination of whether a general practitioner and surgeon, who is bound to examine a person as part of his clinical work, and who has had an opportunity to observe a congenital condition of paralysis and a certain state of idiocy, is competent to testify

on a patient's mental condition. Appellant's theory seems to be that only a specialist in psychiatry or psychology is qualified to testify on a person's mental condition. In support of his theory, he cites the cases of *People* v. *Sands*, 49 P.R.R. 15; *Matter of Masocco* v. *Schaaf*, 234 App. Division 181, 254 N.Y.S. 439; *Selleck* v. *Board of Education*, 276 App. Division 263, 94 N.Y.S. 2d 318; *Nelson* v. *Sun Mutual Insurance Co.*, 71 N.Y.S. 453. None of these cases support the error alleged by plaintiff, nor are they cases directly bearing on expert medical testimony on a person's mental condition. The case of *People* v. *Sands*, *supra*, deals with an expert accountant whose testimony was admitted by the trial court on the ground that it was established in the preliminary investigation that he was qualified to testify. The case of *Masocco* v. *Schaaf, supra*, deals with an officer of the Italian Consulate of the city of Buffalo who was called as a witness to testify on the validity of a marriage based merely on knowledge acquired by reason of his consular duties, although he was not a lawyer. The case of *Sellock* v. *Board of Education, supra*, deals with a Canadian doctor who was not licensed to practise his profession in the State of New York, and was allowed to testify on the condition of a school patient who suffered an accident. The case of *Nelson* v. *Sun Mutual Insurance Co., supra*, deals with an insurance agent whose competence to testify on the import of the phrase "port risk" employed in a marine insurance policy, was challenged.

The foregoing leads us to analyze the error assigned by appellant in order to protect any of his rights that may be affected by the order of the trial court.

The theory of legal expertness rests on two propositions of knowledge: first, the knowledge acquired from the study of scientific matters embraced in a profession, or in a specialization in some branch of knowledge; and, second, the knowledge acquired through daily experience in some task,

or through direct contact with some activity of human beings. The purely professional aspect of expert testimony does not lead to a determination excluding practical experience. As respects medical testimony, it is sufficient that it be shown to the satisfaction of the court that the witness is a graduate physician of a school of medicine in order to consider him competent to testify on any scientific matter comprised in his profession, it being unnecessary to establish his specialization in one of the matters comprised in that profession, even in the case of hypothetical questions on presumed facts unobserved by the medical witness. Where, in addition to the corresponding professional knowledge, the witness has had the opportunity of observing the case clinically, as the family physician, or the physician to which the case has been referred for attention, the value of credibility of his testimony increases in proportion to his opportunity to study and observe the specific case.

The evolution of medicine has necessitated specialization in particular diseases. However, (the law) has been compelled to recognize the fact that the specialist needs, for the normal practice of his profession, those medical centers where the different professionals have the opportunity to meet and treat a single case, which is particularly true of the large cities where access to a larger number of patients has encouraged this practice. For this reason, it has been considered that to sanction the principle that only a specialist may testify as an expert in the particular branch of his profession, would not serve the ends of justice, but, on the contrary, would operate as a discrimination against litigants of meager means.

The question has been fundamentally decided to consist of the degree of credibility which medical testimony of a specialist merits over the testimony of a physician not a specialist, rather than on the lack of capability of the ordinary medical expert. This majority rule applies to mental dis-

eases as well as to any other disease: 54 A.L.R. 862 *et seq.* (1928); *Monahan* v. *Roderick*, 166 N.W. 725, 729, (Evans), (1918); *Miller* v. *Miller*, 23 N.W. 2d 760, 762, (Oliver), (1946); *Storbeck* v. *Fridley*, 38 N.W. 2d 163, 165, (Hale), (1949); *In re Brazman's Will*, 173 S.E. 623, 625, 626, (Blease), (1934); *Holt* v. *State*, 181 P. 2d 573, 580, 581, (Jones), (1947); *Citarella* v. *Equitable Life Assur. Soc.*, 59 N.Y.S. 2d 215, (Per Curiam), (1945); *Grant* v. *Commonwealth*, 196 S.W. 2d 601, 602, (Rees), (1946); *State* v. *Hawkins*, 199 S.E. 284, 289, (Winborne), (1938).

Applying the majority rule of the case law to Puerto Rican realities, we adopt as our local rule the following: A general practitioner legally practising his profession in Puerto Rico is competent to testify as an expert in any branch of scientific knowledge comprised in medicine, and he can therefore answer hypothetical questions on presumed facts, or questions based on his personal knowledge of the case, by reason of the fact that the case was under his professional care and observation, or because he was the patient's regular physician. The specialization of medical knowledge merely implies a greater degree of probability in the scientific correctness of his conclusions, and it is an index which is concerned exclusively with the greater degree of credibility of the testimony.

We have extracted from this case that part of the evidence which proves that the aggrieved party underwent a physical examination by the physician witness, and was under his professional observation before and after childbirth. The medical literature most accessible to the average intellect shows that a certain condition of idiocy or feeble-mindedness may be observed by external signs of congenital organic deterioration, and that the mental condition of a person in an ordinary case leaves apparent traces that can be corroborated by observation of the patient, particularly if the observation is made by a general medical practitioner.

The conclusion on the aggrieved party's mental age is correct according to the Binet-Simon scale. See: *A Text Book of Psychiatry*, Henderson & Gillespie, 7th ed., Oxford University Press (1950), p. 573; *Mental Defect*, Lionel S. Penrose, Farrar & Rinehard ed. (1934), p. 109 *et seq.*, c. X; *Traumatic Amentia in General; Mental Deficiency (Amentia)*, A. F. Tredgold, William Wood and Company, 5th ed. (1929), p. 159; *Medical Dictionary for Lawyers*, Bernard S. Maloy, Gallaghan and Company ed., (1942); *Medical Trial Technique*, Irwing Goldstein and L. Willard Shabat, Gallaghan and Company ed. (1942), p. 90.

2. The evidence shows that the aggrieved party kept silent for over eight months without communicating the criminal offense to her family, and that it was only when her condition of pregnancy became so noticeable that she confessed to her sister-in-law, at the latter's insistence, that she was pregnant by the defendant; that it was a secret "because he had threatened her if she said anything." This behavior, which might seem irrational in an adult, in full use of her mental powers and physically fit to enable her to defend herself against the dreaded aggression, is absolutely rational in a feebleminded person who lives in such a state of physical defenselessness, as the aggrieved party did before and after the perpetration of the crime. The same fear of being punished by her brother if he found out about her predicament, the same fear revealed by the secrecy of her confession, are circumstances which warrant the application to the instant case of the exception to the general rule of admissibility, that the aggrieved party's statements must be contemporaneous with the occurrence in order to be admissible in evidence as part of the *res gestae*. Our own decisions have established the principle that the time factor is not fixed and immutable, and that it may vary according to the circumstances in each case. Thus, we have accepted as admissible the statements made by the aggrieved

party within three months, nine months, and even one year after the occurrence of the crime. *People* v. *Álvarez*, 47 P.R.R. 152, 155, (Wolf), (1934); *People* v. *Muñoz*, 68 P.R.R. 159, 163, (Marrero), (1948); *People* v. *Blanco*, 40 P.R.R. 122, 131, (Hutchison), (1929). Therefore, since the testimony of Dr. Achecar and Juana Miranda de Tacoronte, the aggrieved party's sister-in-law, were admissible as cumulative evidence, the second error was not committed.

The judgment appealed from will be affirmed.